[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO WITHDRAW APPEARANCE OFSPECIAL PUBLIC DEFENDER
I. FACTS
The petitioner, Burnest Freeney, was convicted of two counts of kidnaping in the first degree, two counts of sexual assault in the first degree, and one count of assault in the third degree by a six-person jury in the Superior Court of New Haven (Hadden, J., presiding). The petitioner was sentenced to a total effective sentence of thirty years.
On September 9, 1992, the petitioner filed a petition for writ of habeas corpus on two grounds: (1) that the petitioner was incompetent to stand trial in part due to his use of three prescription drugs; and (2) ineffective assistance of counsel, specifically naming trial counsel's advice that the petitioner not testify on his own behalf at trial.
A special public defender was appointed to represent the petitioner in this habeas matter on December 24, 1992.
The special public defender has concluded that no non frivolous argument exists to support the petitioner's claim. Consequently, the special public defender filed a motion to withdraw on December 6, 1996, accompanied by a supporting memorandum of law. To assist the court, the special public defender also submitted trial transcripts, a private investigator's notes and a letter by Dr. Kenneth M. Selig, which gives an opinion as to the competence of the petitioner during trial.
II. DISCUSSION
The right to appointed counsel is available only where there CT Page 3333 is a non frivolous claim. See Anders v. California, 386 U.S. 738,744-45 (1967); State v. Pascucci, 161 Conn. 382, 385,288 A.2d 408 (1971); Practice Book § 952. "[I]f [appointed] counsel finds [the petitioner's] case to be wholly frivolous, after a conscientious examination of it, [counsel] should so advise the court and request permission to withdraw." Anders v. California,
supra, 386 U.S. 744; State v. Pascucci, supra, 161 Conn. 385; Practice Book § 952. Such a request "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." Anders v. California, supra,386 U.S. 744; State v. Pascucci, supra, 161 Conn. 385. "The court . . . then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."Anders v. California, supra, 386 U.S. 744. See also State v.Pascucci, supra, 161 Conn. 386.
"If [the court] finds any of the legal points arguable on their merits (and therefore not frivolous) [the court] must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." Anders v. California, supra, 386 U.S. 744. See also State v. Pascucci, supra, 161 Conn. 387 (adopting Anders
requirements).
It is well established that habeas corpus cannot be used as an alternative to a direct appeal Payne v Robinson, 207 Conn. 565,569, 541 A.2d 504, cert. denied 488 U.S. 898 (1988); Galland v.Bronson, 204 Conn. 330, 333, 527 A.2d 1192 (1987); Smith v.Barbieri, 29 Conn. App. 817, 819, 618 A.2d 567 (1993). "[H]abeas review of constitutional claims never raised in the trial court, in violation of [the] rules of practice, would thrust too great a burden on [the] criminal justice system." Johnson v.Commissioner, 218 Conn. 403, 417, 589 A.2d 1214 (1991).
III. ISSUES
The petitioner's two primary claims for habeas relief are: (1) his incompetence to stand trial; and (b) ineffective assistance of counsel during trial. These are discussed below.
A. Incompetence to Stand Trial
"The conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. This rule imposes a constitutional obligation, on the trial court, to CT Page 3334 undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial." (Brackets omitted; citations omitted; internal quotation marks omitted.) State v. Gonzalez, 205 Conn. 673, 686, 535 A.2d 345
(1987). "Competence to stand trial is a legal question which must ultimately be determined by the trial court." Id., 687. "The fact that the defendant was receiving medication . . . of itself does not render him incompetent." (Brackets omitted; citation omitted.) Id., 688.
A review of the transcript provides no indication that the petitioner was incompetent to stand trial. First, the petitioner's supervisor testified as to the petitioner's successful employment until the time of his arrest and that he would willingly hire the petitioner again. (See transcript of sentence hearing, p. 15 et seq.). The petitioner also understood that it was his option to testify on his own behalf. (See transcript, pp. 589-91.)
Upon independent review of the record, Dr. Kenneth Selig concludes that the petitioner was competent to stand trial. Dr. Selig, in coming to this conclusion, noted that: (1) the petitioner did not show any outward disturbance for the duration of the trial or sentencing disposition; (2) the petitioner was functioning well in full-time employment for the eight months prior to his incarceration; and (3) the decision of the petitioner's trial counsel not to order a competency evaluation. (See Letter of Dr. Selig to Attorney Dee, December 2, 1996, p. 2.) Dr. Selig was, however, unable to obtain any past medical or psychiatric records of the petitioner on which to base his decision, including those of the Department of Corrections for the time the petitioner was incarcerated during trial, January 1992. (See Letter of Dr. Selig to Attorney Dee, December 2, 1996, p. 1.)
Dr. Selig's opinion, upon which the special public defender relies, is compelling, even without a review of the petitioner's past psychiatric records or the records of the Department of Corrections. Dr. Selig has rendered an unequivocal expert opinion, based on all the information available to him from all sources. Petitioner has failed to provide any medical or psychiatric records to assist Dr. Selig in reaching a different conclusion. The Court agrees that no non-frivolous arguments can be made in support of this claim made by petitioner. CT Page 3335
B. Ineffective Assistance of Counsel
The petitioner's habeas claim asserted ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel" McMann v Richardson, 397 U.S. 759, 771
n. 14 (1970). "The right [to the effective assistance of counsel] is firmly grounded in the mandates of the sixth amendment to the United States constitution, the fourteenth amendment to the United States constitution, and article first, § 8, of the Connecticut constitution . . . The right to counsel . . . is the right to effective assistance and not the right to perfect representation." Johnson v. Commissioner, 36 Conn. App. 695, 701,652 A.2d 1050 (1995). See also Commissioner of Correction v.Rodriguez, 222 Conn. 469, 478, 610 A.2d 631 (1992) (explaining that effective assistance need not be error free)
The Connecticut Supreme Court has adopted the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668
(1984); to evaluate ineffective assistance of counsel claims.Copas v. Commissioner of Correction, 234 Conn. 139, 154,662 A.2d 718 (1995); Ostolaza v. Warden, 26 Conn. App. 758, 761,603 A.2d 768 (1992).
The Strickland v. Washington test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different. Strickland v. Washington, supra, 466 U.S. 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted). Fair v. Warden, 211 Conn. 398, 402,559 A.2d 1094, cert. denied 493 U.S. 981 (1989), quoting Strickland v.Washington, supra, 466 U.S. 687.
The petitioner has the burden of identifying "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland v. Washington,
supra, 466 U.S. 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. See also Fair v. Warden, supra, 211 Conn. 402-03 (discussing Strickland v. Washington standard); State v. Talton,197 Conn. 280, 297, 497 A.2d 35 (1985). "Judicial scrutiny of CT Page 3336 counsel's performance must be highly deferential . . . the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[1] (Internal quotation marks omitted.) Quintana vWarden, 220 Conn. 1, 5, 593 A.2d 964 (1991), quoting Stricklandv. Washington, supra, 466 U.S. 689.
The petitioner in his petition for writ of habeas corpus alleges ineffective assistance of counsel in that his trial counsel advised the petitioner not, (or did not allow the petitioner), to testify on his own behalf.
"While the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, the `if' and `when' of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." (Citation omitted; internal quotation marks omitted.) State v. Joyner, 225 Conn. 450, 482, 625 A.2d 791
(1993).
A review of the trial transcript clearly indicates that the defendant was given the opportunity to testify, but elected not to do so. Moreover, the court questioned trial counsel whether he had explained the possible benefits of personal testimony to the petitioner, with the court giving the petitioner the opportunity to interrupt the court if he disagreed with anything trial counsel represented to the court. (See transcript, pp. 589-91.) The petitioner did not dispute anything his trial counsel told the Court regarding his decision not to testify.
Accordingly, this ground raised by the petitioner to support his ineffective assistance of counsel claim is frivolous.
IV. ADDITIONAL ISSUES
In his interview with counsel's private investigator, the petitioner also raised concerns regarding trial counsel's (1) failure to investigate or call outside witnesses; in effect, the petitioner challenges trial counsel's failure to put on a defense; and (2) insufficient cross-examination of the state's witnesses, including allegedly "opening a door" to the introduction of the petitioner's past criminal record. Each of these claims is discussed below:
(1) Alleged failure to investigate; failure to call witnesses
CT Page 3337
The duty to investigate is defined as a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland v.Washington, supra, 466 U.S. 691. "The reasonableness of a decision not to investigate is to be judged according to the circumstances of each case with great deference given to the attorney's decision." Id. Moreover, courts do not favor allegations that trial counsel failed to call certain witnesses because the presentation of testimonial evidence is a matter of trial strategy. Chace v. Bronson, 19 Conn. App. 674, 680-81,564 A.2d 303 (1989), citing Schwander v. Blackburn, 750 F.2d 494, 500
(5th Cir. 1985). "The failure of a defense counsel to call a potential defense witness does not constitute ineffective assistance of counsel unless there is some showing that the testimony would have been helpful in establishing the asserted defense." State v. Talton, supra, 197 Conn. 297.
Trial counsel's failure to call witnesses constitutes trial strategy, which should be given great deference by the reviewing court. The petitioner has not established the existence of such witnesses or whether they would be able to corroborate his story. There are no non-frivolous arguments to be made in support of this allegation.
(2) Alleged insufficient cross-examination
The trial transcript reveals that defense trial counsel attempted to challenge the complainant's credibility on cross examination and attempted to impeach the state's corroborating witnesses by eliciting inconsistencies in what the complainant told these witnesses. (See, e.g, transcript, pp. 211-219, 360.) Trial counsel also performed a reasonable cross examination of expert witnesses. (See, e.g., transcript, pp. 317-25, 371-72, 448.) Trial counsel would not have been able to conduct such cross examination without performing an adequate investigation.
Furthermore, trial counsel did not "open the door" to the admission of evidence on the petitioner's past criminal record. To the contrary, trial counsel fought to keep such evidence from the jury. (See, e.g., transcript, pp. 2-21, 104.) Trial counsel did question a police officer about whether the officer knew the defendant was on parole. (See transcript, p. 582.) During closing argument, trial counsel explained that the defendant's hiding from police after the incident was not indicative of guilt, but CT Page 3338 fear of coming before the police due to his parole status. (See transcript, p. 651. See also transcript, pp. 567 et seq.) This difficult issue was handled very ably, by trial counsel Trial counsel also tried to mitigate the impact of the petitioner's past criminal record during the sentencing phase of the trial by bringing in the petitioner's former employer as a character reference. (See transcript of sentencing hearing, pp. 15 et seq.)
Accordingly, the Court finds that the inadequate cross-examination basis of the petitioner's ineffective assistance of counsel allegation is frivolous.
CONCLUSION
The Court finds that there are no non-frivolous issues to pursue on behalf of the petitioner's Habeas Corpus case. Therefore the Motion to Withdraw, filed by the Special Public Defender is
GRANTED.
Since there appears to be no basis at all for any of petitioner's claims, the Habeas Corpus Petition is hereby
DISMISSED. P.B. § 529U.
BY THE COURT,
Honorable Jonathan J. Kaplan